UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SEAN MCNAMARA,

        Plaintiff,

v.                                            Case No. 25-cv-1708-bhl

MARCUS KING and
DAVID JOHNSON,

        Defendants.

## SCREENING ORDER

Plaintiff Sean McNamara, who is currently serving a state prison sentence at the Wisconsin Resource Center and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Green Bay Correctional Institution. This matter comes before the Court on McNamara's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

McNamara has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), McNamara has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $29.68. McNamara's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of

Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to McNamara, on August 3, 2025, he became upset after officers searched his cell, so he started to self-harm. He told an officer who walked by his cell that he had self-harmed and showed him the blood on his arm. The officer called for help and waited outside McNamara's cell for a supervisor to arrive. McNamara states that he tapped some small pieces of metal from his window frame and swallowed them while the officers watched. He also swallowed a small rubber pencil. A few minutes later, Defendant Sgt. Marcus King arrived and asked McNamara if he was willing to exit his cell. McNamara asserts that he said no at first, but then he agreed. King and the officers escorted McNamara to the health services unit to be evaluated by a nurse.

McNamara explains that, while waiting for the nurse, he and King disagreed about the treatment McNamara should receive. McNamara wanted to be transported offsite to have the metal pieces and rubber pencil removed from his stomach. McNamara asserts that King looked very angry and frustrated during this conversation. Not long after, a nurse treated McNamara's arm, noted that he had swallowed some metal and a pencil, and placed him on observation status in the restricted housing unit.

A couple of hours later, McNamara was seen by a doctor via telehealth. McNamara asserts that he asked if he could be given an observation blanket because he was cold. The doctor stated that she would talk with the supervisor (King) to see what he thinks. Two hours after that, McNamara saw King passing by his cell and asked him what was going on with the blanket. McNamara asserts that King said, "yes maybe no, we will see how you act tonight." McNamara believed that King was "messing with him" because of their disagreement a few hours earlier. McNamara explains that he became upset and told King, "[Y]ou must want me to freak out and hurt myself." He then climbed up on his sink and began to self-harm. According to McNamara, King responded immediately and began yelling at him. He also pulled out his taser. A couple of minutes later, King allegedly directed Defendant David Johnson to go to the control center to get the OC spray. After Johnson returned, King instructed Johnson to spray McNamara if he looked like he was going to jump off his sink or otherwise started to try to self-harm.

McNamara asserts that he responded to the correctional officers' actions by starting to self-harm while standing on the sink, which was about three feet off the ground. Johnson sprayed McNamara with the OC spray, which went into McNamara's eyes and on the side of his body. McNamara asserts that he could not see and that he fell off the sink. McNamara was able to climb back up onto the sink and, he explains, he planned to jump off the sink to hit his head on the bed, but then he decided not to. He states that when he tried to climb down, he slipped and again fell off the sink. McNamara finally made his way to the front of the cell and was handcuffed. McNamara asserts that about five minutes later, he was escorted down the hall, at which time an officer stated, "wow, that's a lot of spray." McNamara asserts that per prison policy, only supervisors may use OC spray. He states that Johnson is not a supervisor.

### THE COURT'S ANALYSIS

According to McNamara, Johnson used excessive force when he sprayed McNamara with OC spray while he stood on his sink and engaged in self-harm. McNamara also asserts that King violated the Eighth Amendment when he directed Johnson to use the OC spray. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "But not every malevolent touch by a security officer implicates the Constitution." *Id*. When evaluating force used by a state official against an inmate, the "core judicial inquiry" is whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7.

Based on McNamara's thorough description of the events, the Court cannot reasonably infer that Defendants applied force maliciously and sadistically to cause harm. McNamara's narrative confirms that Defendants were trying to restore order in a permissible and reasonable manner in response to McNamara's own actions. McNamara admits that he climbed up on his sink and immediately began to harm himself. He states that King responded by yelling—a reasonable reaction to try to prevent McNamara from hurting himself and to get him to climb down. McNamara further admits that he nevertheless stayed up on the sink and continued to harm or to threaten to harm himself. Given McNamara's own actions and his unpredictable behavior, Defendants could not safely enter his cell, which left them with few options. King stayed by the cell front and ordered Johnson to get the OC spray, an intervention that could be safely used to interrupt McNamara's misconduct and restore order. Importantly, McNamara acknowledges that King directed Johnson to use the OC spray *only* if McNamara harmed himself or looked like he was about to jump off the sink. McNamara admits that he again harmed himself and that it was only then that Johnson used the spray. The Court cannot reasonably infer from this sequence of events that Defendants intended to cause harm. The only reasonable inference is that their intent was to restore order and stop McNamara from harming himself.

McNamara points out that, per prison policy, only supervisors are authorized to use OC spray. But violation of a prison policy alone does not violate the Constitution or suggest deliberate indifference. *See Lewis v. Richards*, 107 F.3d 549, 553 n. 5 (7th Cir. 1997); *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). It is also worth observing that had Defendants done *nothing* to interrupt McNamara's efforts to harm himself, they may have been vulnerable to an Eighth Amendment deliberate indifference claim. *See, e.g.*, *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018) (holding that the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide").

In short, according to his own allegations, McNamara is responsible for the circumstances leading to the injuries he claims he suffered. He placed himself in harm's way by repeatedly climbing up on his sink and by refusing to stop harming himself. The Court cannot reasonably infer that Defendants violated the Constitution when they exercised one of the limited options available to restore order and keep McNamara safe from himself. McNamara therefore fails to state a constitutional claim upon which relief can be granted. Because McNamara does not state

a federal claim, the Court cannot exercise supplemental jurisdiction over any purported state law claims.

Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the Court need not do so where the amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). McNamara's complaint is thorough in its allegations of facts surrounding this claim, so the Court finds that further amendment would be futile.

**IT IS THEREFORE ORDERED** that McNamara's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) based on McNamara's failure to state a federal claim. McNamara's state-law claims are **DISMISSED without prejudice** because the Court does not have jurisdiction over those claims.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that the agency having custody of McNamara shall collect from his institution trust account the $320.32 balance of the filing fee by collecting monthly payments from McNamara's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If McNamara is transferred to another institution, the transferring institution shall forward a copy of this Order along with McNamara's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where McNamara is located.

Dated at Milwaukee, Wisconsin on December 17, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge